NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FILED

JAN 15 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



ANA BEATRIZ BIOCINI, AKA Ana
Jaramillo De Rivera, AKA Ana Racines
Jaramillo,

Petitioner,

v.

MATTHEW G. WHITAKER, Acting
Attorney General,

Respondent.

No.    15-73379

Agency No. A091-182-333

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted August 13, 2018
San Francisco, California

Before:  BEA and MURGUIA, Circuit Judges, and SOTO,[**] District Judge.

Ana Beatriz Biocini, a native and citizen of Colombia, petitions this court

for review of the Board of Immigration Appeals ("BIA") dismissal of her claims

for immigration relief. Biocini is a legal permanent resident ("LPR") who was

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable James Alan Soto, United States District Judge for the District of Arizona, sitting by designation.

arrested in 1995 for conspiring to distribute cocaine in violation of 21 U.S.C. § 846. In 1998, Biocini pleaded guilty to conspiring to distribute cocaine, and in 2003 was sentenced to 30 months imprisonment and 5 years supervised release. In 2005, the U.S. Department of Homeland Security placed Biocini in removal proceedings.

On appeal, Biocini advances four arguments. First, she challenges the BIA's determination that she is ineligible for a waiver of deportation under § 212(c) of the Immigration and Nationality Act ("INA"). Second, Biocini contests the BIA's conclusion that her drug offense constitutes a particularly serious crime, which rendered her ineligible for withholding of removal. Third, Biocini asserts that the BIA erred in determining that her claim for protection under the Convention Against Torture ("CAT") was improperly before the BIA because the BIA erroneously concluded that the Ninth Circuit's previous dismissal of this claim precluded the BIA from considering it. Finally, Biocini asks us to permanently enjoin the government from seeking to remove her from the United States under the state-created danger doctrine, which allows federal courts to enjoin the government from deporting an alien when the government's malfeasance has created conditions that would place a person who is deported in danger. *See Wang v. Reno*, 81 F.3d 808 (9th Cir. 1996) (per curiam).

We have jurisdiction pursuant to 8 U.S.C. § 1252(a), and we deny the

petition in part, grant the petition in part, and remand to the BIA for further proceedings.

1.     The Antiterrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") rendered § 212(c)'s discretionary waiver from deportation unavailable to aliens convicted of aggravated felonies. *See INS v. St. Cyr*, 533 U.S. 289, 297 (2001); *Cardenas-Delgado v. Holder*, 720 F.3d 1111, 1115 (9th Cir. 2013). In *Robles Lopez v. Sessions*, No. 15-72747, 2018 WL 4000256 (9th Cir. Aug. 22, 2018), our court held that a petitioner convicted of an aggravated felony after the effective date of AEDPA's 1996 amendment to § 212(c) was ineligible for relief under § 212(c). *Id.* at \*6. *Robles Lopez* rejected a substantially similar argument to the one Biocini makes here—that the changes Congress made to § 212(c) in the 1990s have an impermissibly retroactive effect because the criminal conduct underlying her conviction predates AEDPA and IIRIRA. *See id.* at \*5–6. Here, Biocini's decision to plead guilty in 1998 postdates both the 1996 AEDPA amendment and the IIRIRA's repeal of § 212(c) in 1997. *See Cardenas-Delgado*, 720 F.3d at 1115; 8 U.S.C. § 1182(c) (repealed 1997). Accordingly, Biocini is ineligible for § 212(c) relief. *See Robles Lopez*, 2018 WL 4000256, at \*6.

2.     We review for abuse of discretion the BIA's conclusion that an offense is a particularly serious crime. *See Avendano-Hernandez v. Lynch*, 800

3

F.3d 1072, 1077 (9th Cir. 2015). We retain jurisdiction over questions of law and whether the BIA and IJ considered the appropriate factors or "relied on improper evidence" in determining whether a crime is particularly serious. *See Anaya-Ortiz v. Holder*, 594 F.3d 673, 676 (9th Cir. 2010).

In making the particularly serious crime determination, the BIA and IJ conduct a case-by-case analysis of the four *Frentescu* factors. *Blandino-Medina v. Holder*, 712 F.3d 1338, 1344 (9th Cir. 2013) (quoting *Matter of Frentescu*, 18 I. & N. Dec. 244, 247 (1982)). We have clarified that a separate determination of the fourth factor is unnecessary. *See Gomez-Sanchez v. Sessions*, 892 F.3d 985, 991 (9th Cir. 2018) ("[T]here is no statutory requirement for a separate determination of dangerousness focusing on the likelihood of future serious misconduct on the part of the alien.") (citation omitted); *Blandino-Medina*, 712 F.3d at 1344 n.4.

Here, the IJ relied on contested portions of Biocini's presentence report ("PSR") in determining that Biocini's offense was a particularly serious crime, a decision that the BIA affirmed.[1] Specifically, the BIA and IJ relied upon contested

---

[1] Biocini has administratively exhausted her claim challenging the BIA's determination that her drug conviction is a particularly serious crime because the BIA decided this issue on the merits. *See Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 874 (9th Cir. 2008) ("[O]ur precedent is quite clear that claims addressed on the merits by the BIA are exhausted."). Although Biocini must specify which issues form the basis of her appeal, she need not "raise the *precise* argument below." *Id.* at 873; *see also Garcia v. Lynch*, 786 F.3d 789, 792–93 (9th Cir. 2015). Before the BIA, Biocini challenged the IJ's determination that her drug conviction constitutes a particularly serious crime. In the brief Biocini submitted to the BIA,

portions of Biocini's PSR related to Biocini's role as a "middle person" in the

conspiracy and as a primary source for cocaine. At Biocini's sentencing, the

federal district court judge stated that the court "accept[ed] [the defense's]

characterization [of the contested facts] or [was] advising the parties that [it was]

not going to consider the objected to facts for purposes of sentencing." In other

words, as to the contested facts, at sentencing the district court accepted Biocini's

version of the facts or did not adopt the contested facts contained in the PSR.

Although the BIA and IJs can rely on PSRs in making a determination of whether

an offense is a particularly serious crime, the information in the PSR must be

---

Biocini argued that she "was the 'middle person' and [was] never classified as the drug supplier as noted in the pre-sentence report." In its October decision, the BIA considered this argument but found that the IJ appropriately relied on the PSR.

In this appeal, Biocini challenges the BIA and IJ's reliance on "erroneous facts" from the PSR in concluding that her drug conviction constitutes a particularly serious crime. Our precedent is clear that a petitioner like Biocini is not required to have made the "*precise*" argument on appeal during the proceedings below. *Vizcarra-Ayala*, 514 F.3d at 873; *Figueroa v. Mukasey*, 543 F.3d 487, 492 (9th Cir. 2008). Biocini's argument to the BIA regarding her role in the offense "put the BIA on notice" about the IJ's factual findings that relied on information in the PSR because Biocini specifically contested how the PSR "noted" her involvement in the offense. Biocini's brief to the BIA *disagreed* with the PSR's characterization of her as a drug supplier. The BIA subsequently rejected Biocini's argument. Accordingly, Biocini has preserved her claim challenging the BIA and IJ's factual conclusions about Biocini's offense that relied on the PSR. *See Vizcarra-Ayala*, 514 F.3d at 873–74; *Figueroa* 543 F.3d at 492. The BIA had occasion to consider the reliability of information in the PSR. This conclusion is especially appropriate because we do not apply the exhaustion requirement in a "formalistic" manner. *See, e.g.*, *Figueroa* 543 F.3d at 492.

5

reliable. *See Anaya-Ortiz*, 594 F.3d at 678 (holding the BIA can rely on "all *reliable* information" when making a particularly serious crime determination) (emphasis added).

Here, the BIA and IJ's reliance on the contested statements in the PSR to support the particularly serious crime determination was error because the alleged facts relied upon were contested and ultimately rejected or not adopted by the district court.[2] *Cf. Fuentes v. Lynch*, 788 F.3d 1177, 1183 (9th Cir. 2015) (affirming the BIA's reliance on an *uncontested* PSR to determine that the petitioner had committed an aggravated felony); *Anaya-Ortiz*, 594 F.3d at 678.

Further, in concluding that the nature of Biocini's offense is particularly serious, the BIA stated that Biocini pleaded guilty to distributing between five and fifteen kilograms of cocaine and stated that it was "a notably large amount of a controlled substance." However, the IJ previously concluded that Biocini pleaded guilty to distributing one kilogram of cocaine. The BIA cannot re-characterize

---

[2] The dissent appears to misconstrue our conclusion about the evidence the BIA and IJs may rely upon. It is settled that the BIA and IJs may consider "all *reliable* information . . . in making a particularly serious crime determination." *Anaya-Ortiz*, 594 F.3d at 678 (quoting *Matter of N-A-M-*, 24 I. & N. Dec. 336, 342 (BIA 2007)) (emphasis added). Further, we *do not* conclude that a judicial factfinder must conclusively determine facts in a PSR for them to be reliable. However, as we explain above, because Biocini contested facts in the PSR that the IJ and BIA later relied upon in making their decisions, and at Biocini's sentencing the judge rejected or did not adopt those facts, there is reason to question the reliability of the contested facts. Our conclusion about the reliability of the information in the PSR in *this* case stems from the facts presented here.

facts the IJ has previously decided. *See Ramon-Sepulveda v. INS*, 824 F.2d 749, 750 (9th Cir. 1987) ("When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose.") (citation omitted).[3]

Because the BIA and IJ relied on disputed facts that were not reliable information, and these errors impacted two of the three *Frentescu* factors—the nature of the conviction and the circumstances and underlying facts of the conviction—we remand to the BIA to conduct the particularly serious crime analysis again. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."); *Vitug v. Holder*, 723 F.3d 1056, 1064 (9th Cir. 2013) ("[T]he BIA abuses its discretion where it ignores arguments or evidence.").

3.      In 2013, a previous panel of our court dismissed Biocini's CAT claim.

---

[3] The dissent argues that "[b]ecause the BIA did not ratify the IJ's 2006 finding in the initial appeal, the IJ's finding is not a 'final judgment.'" Permitting the BIA to adopt a contrary finding made by the IJ seven years later, as the dissent advocates without citing to any authority, would unnecessarily allow a settled issue of fact to resurface. *See Ramon-Sepulveda*, 824 F.2d at 750 (citing *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)). The parties had an opportunity to litigate the issue back in 2006 and there is no reason to revive a settled issue of fact that the IJ decided in 2006. *Id.*

*See Biocini v. Holder*, 525 F. App'x 630, 632 (9th Cir. 2013). The government

argues that the dismissal precludes Biocini from raising her CAT claim here. The

preclusive effect of this court's prior decision is a legal question which we review

de novo. *Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011). For a previous

judicial decision to have a preclusive effect on the present case there must be an

identity of claims, a final judgment on the merits, and privity between the parties.

*See Tahoe Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d

1064, 1077 (9th Cir. 2003).

Here, the only question is whether our court's previous decision resolved the

CAT claim on the merits.[4] Fairly read, the 2013 memorandum disposition did not

resolve the CAT issue on the merits because the disposition only discussed the

particularly serious crime issue and dismissed Biocini's remaining claims,

---

[4] The dissent argues that Biocini waived her CAT claim because she did not raise it before the IJ following the Ninth Circuit's remand to the BIA in 2013. Biocini, however, raised her CAT claim before the BIA following remand from this court. Subsequent to that, the BIA concluded in its remand order to the IJ that Biocini's CAT claim was no longer before the BIA because of this court's 2013 decision. As explained above, this was error. The dissent correctly points to *Fernandes v. Holder* for the proposition that a remand from the BIA to the IJ is unlimited unless the BIA expressly limits the scope of the remand. 619 F.3d 1069, 1074 (9th Cir. 2010). However, in explaining its holding, *Fernandes* noted that a remand's articulated purpose is insufficient to "foreclose[] consideration of other *new* claims or motions that the IJ deems appropriate." *Id.* (emphasis added). Biocini's CAT claim could not be construed as a new claim. Therefore, we do not read *Fernandes* as controlling in situations where, as here, the BIA remands to the IJ explaining that a *judicial* ruling resolved petitioner's claim—here Biocini's CAT claim—and is therefore no longer a disputed claim.

8

including the CAT claim. *See Biocini*, 525 F. App'x at 632. Moreover, Biocini raised her CAT claim in her brief before the BIA, thus preserving her claim. *Cf. Abebe v. Mukasey*, 554 F.3d 1203, 1208 (9th Cir. 2009) (en banc) (per curiam). Yet, the BIA did not address the merits of Biocini's CAT claim because the BIA believed that our court's dismissal of the CAT claim in 2013 meant the CAT claim was no longer before it. Since the previous Ninth Circuit panel did not decide the CAT claim on the merits, the dismissal did not preclude Biocini from raising the CAT claim before the BIA. *See Tahoe Sierra Pres. Council, Inc.*, 322 F.3d at 1077. Accordingly, we remand the CAT claim to the BIA for it to consider Biocini's CAT claim on the merits. *See Ventura*, 537 U.S. at 16.

4.     We have jurisdiction to consider Biocini's request for an injunction preventing her deportation pursuant to the state-created danger doctrine. *See Morgan v. Gonzales*, 495 F.3d 1085, 1090–91 (9th Cir. 2007). Biocini has failed to demonstrate that the government engaged in affirmative misconduct such that the government was grossly negligent or deliberately indifferent in pursuing Biocini's deportation. *See id.* at 1092–93 (holding that petitioner failed to allege affirmative government misconduct to warrant injunctive relief preventing his deportation where he and the government entered into a cooperation agreement in a drug case and the government subsequently sought to deport him to England); *cf. Wang*, 81 F.3d at 820–21 (granting an injunction to prevent deportation where the

9

Department of Justice took affirmative steps to bring a witness who had been tortured by Chinese officials to the United States to testify in a heroin case and who would likely be tortured again if deported back to China). Accordingly, we deny Biocini's request for injunctive relief.

**DENIED in part, GRANTED in part, and REMANDED**.



*Biocini v. Whitaker*, No. 15-73379

BEA, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that Biocini is ineligible for § 212(c) relief and that the state-created danger doctrine does not support Biocini's request for injunctive relief. But because Biocini failed to exhaust her "erroneous facts" challenge to the BIA's particularly serious crime determination and waived her claim for relief under the Convention Against Torture (CAT), I would deny the petition in its entirety.

1. We lack jurisdiction to review a claim if the "merits" of that claim are not presented to the BIA. *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004). "The exhaustion doctrine requires that the petitioner 'put the BIA on notice' as to the specific issues so that the BIA has 'an opportunity to pass on th[ose] issue[s].'" *Figueroa v. Mukasey*, 543 F.3d 487, 492 (9th Cir. 2008) (quoting *Zhang v. Ashcroft*, 388 F.3d 713, 721 (9th Cir. 2004) (per curiam)). Although a petitioner need not "raise the precise argument below" to preserve a claim for appeal, he must at least "articulate each essential part of the contention he now raises." *Garcia v. Lynch*, 786 F.3d 789, 793 (9th Cir. 2015).

In her petition for review, Biocini argues that the IJ erred by relying on improper evidence: contested portions of Biocini's PSR, and a finding that Biocini had pleaded guilty to conspiracy to distribute between 5 and 15 kilograms of

1

cocaine. But Biocini did not raise the argument that the PSR was improper evidence for the IJ to consider in her appeal to the BIA. We therefore lack jurisdiction to review it.

The majority concludes that Biocini exhausted her improper evidence challenge merely by arguing to the BIA that her drug conviction does not constitute a particularly serious crime. That "general challenge," however, is insufficient to "specify which issues form the basis of the appeal." *Zara v. Ashcroft*, 383 F.3d 927, 930 (9th Cir. 2004).

Our decision in *Zara* is instructive. In *Zara*, the petitioner had argued before the BIA that the IJ erred in finding that she "did not sufficiently establish her claims of past and future persecution from the Aquino [P]arty." *Id*. Specifically, she argued that the IJ had erred in finding that the Aquino Party had ceded control of the Philippines at the time she left the country. *Id.* In her petition for review, Zara again contended that "there was sufficient evidence supporting her claim of past persecution," but based on new grounds. *Id.* Although both challenges related to the sufficiency of evidence for her claim of past persecution, we held that "[t]he issues Zara presents to this court in her petition for review differ from the issues she presented in her appeal to the BIA." *Id.* Accordingly, we dismissed Zara's petition for lack of jurisdiction.

2

The same is true here. Below, Biocini argued that the IJ erred in finding that she had committed a "particularly serious crime," because she was only a "middle person" and she was convicted only of conspiracy. In her petition for review, Biocini again challenges the IJ's particularly serious crime determination, but on different grounds: Biocini now argued the IJ should not have relied on the contested portions of her PSR or the amount of cocaine she was convicted of conspiracy to distribute. It is one thing to characterize oneself as a "middle person" and not a true engine of a drug distribution conspiracy. It is quite another to dispute the accuracy of the weight of drugs which a document describes one carried. When a baseball player describes himself as a "journeyman hitter," it doesn't quite capture the fact that his batting average happens to be below the "Mendoza line" (below .200).

Biocini did not raise her specific challenges below, and her general challenge to the IJ's particularly serious crime determination does not suffice to preserve those issues for appeal.

2. Even if I were to agree with the majority that Biocini preserved her improper evidence challenge, the BIA and IJ did not err in relying on either the presentence report or the finding that she was convicted of conspiracy to distribute between 5 and 15 kilograms of cocaine. "[N]othing in the language of the 'particularly serious crime' provisions in the INA limits the scope of permissible

3

evidence." *Anaya-Ortiz v. Holder*, 594 F.3d 673, 678 (9th Cir. 2010). Accordingly, we have endorsed the BIA's "practice of 'allow[ing] both parties to explain and introduce evidence as to why a crime is particularly serious or not.'" *Id.* (quoting *In re N–A–M–*, 24 I. & N. Dec. 336, 344 (BIA 2007)). The BIA may consider "all reliable information" in making a particularly serious crime determination. *Id.*

The BIA did not err in relying on Biocini's PSR merely because it was "not adopted by the district court." Notably, the district court also did not strike the contested portions of the PSR from the record. And there is no requirement that facts be conclusively determined by a judicial factfinder to be "reliable." To the contrary, in a decision this court later endorsed, the BIA approved reliance on a Statement in Support of Warrantless Arrest that was not adopted by the court. *See Anaya-Ortiz*, 594 F.3d at 677 (citing *In re N–A–M–*, 24 I. & N. Dec. at 343); *Perez-Palafox v. Holder*, 744 F.3d 1138, 1141 (9th Cir. 2014) (noting that the IJ relied on an incorrect interpretation of law when declining to consider a police report under the *Anaya-Ortiz* "all reliable evidence" rule).

Nor did the BIA err in adopting the IJ's finding that Biocini was convicted of conspiracy to distribute between 5 and 15 kilograms of cocaine. The indictment and plea agreement reflect that Biocini pleaded guilty to conspiracy to distribute between 5 and 15 kilograms of cocaine. In the 2013 order at issue in this appeal, the IJ found, consistent with the indictment and plea agreement, that Biocini had

4

pleaded guilty to conspiracy to distribute between 5 and 15 kilograms of cocaine. The IJ weighed this fact when deciding whether Biocini had been convicted of a particularly serious crime, and the BIA adopted the IJ's finding.

The majority holds that the BIA's finding is barred by res judicata, citing the IJ's 2006 order (the first order in Biocini's immigration proceedings), which inexplicably stated that Biocini had pleaded guilty to conspiracy to distribute "a kilogram of cocaine." But res judicata applies only when there is a "final judgment on the merits." *Tahoe Sierra Pres. Council*, *Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003). Because the BIA did not ratify the IJ's 2006 finding in the initial appeal, the IJ's finding is not a "final judgment." The BIA therefore did not err in adopting the IJ's contrary 2013 finding, which accurately reflects the indictment and plea agreement.

Regardless, res judicata is an affirmative defense that is waived if not timely asserted. *Arizona v. California*, 530 U.S. 392, 410 (2000). Biocini never cited the discrepancy between the 2006 and 2013 IJ orders before the BIA. Thus, she has also waived this argument.

3. Finally, Biocini has also waived her claim for relief under the CAT. After our court remanded the case to the BIA in *Biocini v. Holder*, 525 F. App'x 630 (9th Cir. 2013), the BIA further remanded Biocini's case to the IJ with an open

mandate.[1] This allowed Biocini to raise her CAT claim before the IJ. When Biocini failed to do so, she waived it. Accordingly, the BIA did not err in declining to consider Biocini's CAT claim for the first time on appeal.

Because I would hold that Biocini failed to exhaust her improper evidence challenge and that she waived her CAT claim by failing to raise it to the IJ on remand, I dissent as to that section of the majority's disposition. I otherwise join the majority in full.

---

[1] We have previously held that a remand from the BIA to the IJ is not limited unless the BIA expressly limits the scope of the remand. *See Fernandes v. Holder*, 619 F.3d 1069, 1074 (9th Cir. 2010). As the BIA noted, the remand to the IJ in this case was not limited. Thus, even if the majority is correct that Biocini's CAT claim survived this court's 2013 memorandum disposition, the BIA divested itself of jurisdiction through its remand order and the claim was properly before the IJ. *See Matter of Patel*, 16 I. & N. Dec. 600, 601 (BIA 1978).